UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-20955-CIV-LENARD/ELFENBEIN

**DAWN L. CAMPBELL**,

    Plaintiff,

v.

**SP CRUISES OPCO LIMITED et al.**,

    Defendant.

_____/

**<u>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS</u>**

THIS CAUSE is before the Court on the Motion to Dismiss ("Motion") (D.E. 39) filed by Defendant SP Cruises OPCO Limited d.b.a. Azamara ("Azamara"), seeking the dismissal of Plaintiff Dawn Campbell's Amended Complaint ("Amended Complaint") (D.E. 27). The Plaintiff has filed her response ("Response") (D.E. 47) and the Defendant has filed a reply ("Reply") (D.E. 55). This matter is now ripe for adjudication. The Court, having considered the Complaint, the Motion, the Response, the Reply, the docket, and otherwise being fully advised in the premises, finds as follows.

**I.        Background**

The Plaintiff filed her Amended Complaint on May 14, 2024, alleging that she suffered damages as a result of the Azamara and co-defendants' Gulliver Travel D.O.O. ("Gulliver") and XYZ Corporation's (Azamara, Gulliver, and XYZ Corporation hereinafter collectively referred to as "Defendants") negligence. D.E. 27. The Counts alleged by the

Plaintiff include: (I) General Negligence Against Azamara; (II) Negligent Failure to Warn Against Azamara; (III) Negligent Misrepresentation Against Azamara; (IV) Negligent Selection of Shore Excursion Operator by Azamara; (V) Negligent Retention of Shore Excursion Operator by Azamara; (VI) Negligence Against the Excursion Entities; and (VII) Apparent Agency or Agency by Estoppel Claim Against Azamara. D.E. 27 at 23-46.

According to the Amended Complaint, on or around April 17, 2023, the Plaintiff was a passenger on the Azamara cruise ship, *Azamara Journey* ("Journey"), which made a scheduled port-of-call in Croatia.[1] *See* D.E. 27. During the scheduled port-of-call in Croatia, the Plaintiff partook in a shore excursion to Krka National Park ("KNP"), for which Azamara advertised and sold tickets. After reaching KNP and debussing at the park entrance, the Plaintiff was struck by the tour bus that had taken her to KNP. *Id* at 12-13. The Plaintiff alleges that the tour bus was co-managed and/or co-operated by Azamara. *Id* at 13. As a result of being struck by the bus, Plaintiff was thrown into an adjacent ravine which caused her serious injuries requiring immediate medical care. *Id* at 13-14. The Plaintiff now seeks compensation for the Defendants' alleged negligence. Anticipating Azamara's invocation of the waiver of liability ("Shore Excursion Waiver") contained within Section 6 of the Ticket Contract ("Ticket Contract"), the Plaintiff argues the Ticket Contract adopts Athens Convention, and that the Shore Excursion Waiver is thus voided by Article 18 of the Athens Convention.[2] D.E. 27 at 4.

---

[1] The Journey is a vessel sailing under the flag of Malta. D.E. 27 at 2.
[2] *Athens Convention Relating to the Carriage of Passengers and their Luggage by Sea, Dec. 13, 1974, 1463 U.N.T.S. 19.*

2

Azamara filed its Motion on June 4, 2024, alleging, *inter alia*, that the Plaintiff, by agreeing to the Ticket Contract, expressly waived Azamara's liability for any injury occurring during shore excursions.[3] D.E. 39 at 1-2; D.E. 39-1 at 11. Accordingly, Azamara argues, it is not liable to the Plaintiff for any damages she suffered during the shore excursion. *See generally* D.E. 39. The Motion alleges that the tour bus which struck the Plaintiff was owned and operated by Gulliver and that Azamara did not operate or control the bus, nor employ the driver. *Id* at 1. Azamara argues that since the Journey did not travel between a United States port, or between any such port and a foreign port, the Shore Excursion Waiver is not invalidated by 46 U.S.C. § 30527.[4] *Id* at 7. Azamara states that this action is governed by general maritime law. *Id* at 3. The Motion further alleges that the Athens Convention is inapplicable beyond the specific terms that were incorporated into the Ticket Contract.[5] *Id* at 8-9. Because of the alleged validity of the Shore Excursion Waiver, Azamara argues that the Plaintiff has insufficiently pled a claim on which relief could be granted, and that the Amended Complaint should therefore be dismissed.

The Plaintiff filed her Response on June 28, 2024, reiterating her arguments from the Amended Complaint. The Response alleges that because the Ticket Contract incorporates specific sections of the Athens Convention, the entirety of the Athens

---

[3] Azamara advances alternative bases for dismissal of each of the Counts against it (Counts I-V and VII).

[4] The subject cruise began and ended in Venice and did not stop at a U.S. port. D.E. 39 at 1.

[5] Section 12(d) of the Ticket Contract incorporates the Athens Convention and Council Regulation (EC) No 392/2009, with specific regard for limitation of its liability on cruises that embark or disembark at a port of a European Union Member and do not embark, disembark, or call at any U.S. port. D.E. 39-1 at 13-14.

3

Convention as well as other EU regulations and directives apply to the Ticket Contract.[6] D.E. 47 at 3-5. As a result, the Plaintiff argues, the Shore Excursion Waiver is voided by the Athens Convention and EU law. *Id* at 7-13. The Plaintiff argues that despite the Ticket Contract's choice of law provision, the incorporation of specific terms of the Athens Convention and Council Regulation (EC) No 392/2009 ("Regulation 392/2009") create ambiguity in the contract, which should be resolved in favor of the Plaintiff. *Id* at 6.

Azamara filed its Reply on July 18, 2024, echoing its Motion, specifically arguing that the Shore Excursion Waiver was valid and that the only portions of the Athens Convention which were expressly included as terms applied to the Ticket Contract. D.E. 55 at 5-7. Azamara argues that because the choice of law clause clearly states that the contract is governed by general maritime law, and because the terms that incorporate the Athens Convention and EU law are limited to specific circumstances, there is no ambiguity in the Ticket Contract or Shore Excursion Waiver. *Id* at 4-5.

## II.   Applicable Law and Legal Standard

Rule 12(b)(6) states that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). While pleading "does not need detailed factual allegations…a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions[.]" *Bell Atl. Corp. v.*

---

[6] The Plaintiff does not contest that general maritime law applies to the contract. D.E. 47 at 3-5. Rather, she argues that *in addition to* general maritime law, the Athens Convention, and various EU regulations and directives govern the Ticket Contract. *Id*. Plaintiff does not dispute that the Shore Excursion Waiver would not be invalidated by 46 U.S.C. § 30527. *Id* at 6.

*Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Moreover, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To meet this standard of plausibility, the plaintiff need not show that their claim is probable "but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. By contrast, for a motion to dismiss to be successful, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

General maritime law "is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 865 (1986). Under general maritime law, owners and operators of ships at sea owe a duty of reasonable care to those legally aboard their ships. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959). General maritime law applies to cases predicated on alleged torts committed aboard ships at sea, including cruise ships. *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989); *Wajnstat v. Oceania Cruises, Inc.*, 2011 WL 13099034, at *2 (S.D. Fla. July 12, 2011) (Cooke J.). In this District, torts that occur during shore excursions at a scheduled port-of-call of a cruise are similarly controlled by general maritime law. *Isbell v. Carnival Corp.*, 462 F.Supp.2d 1232, 1236 (S.D. Fla. 2006) (Moreno, J.).

"Where the contract terms are clear and unambiguous, the court will look to that alone to find the true intent of the parties." *Caradigm USA LLC v. PruittHealth, Inc.*, 253

F. Supp. 3d 1175, 1185 (N.D. Ga. 2017) (citing *Greenberg Farrow Architecture, Inc. v. JMLS 1422, LLC*, 339 Ga.App. 325, 329 (2016)). Nevertheless, where ambiguities in cruise ship ticket contracts exist, such ambiguities are resolved against the carrier. *Wajnstat,* 2011 WL 13099034, at *5.

Courts in the Southern District of Florida have routinely held terms of a ticket contract that disclaim or limit liability are binding under maritime law. See *Verna v. Seven Seas Cruises De R.L., LLC*, No. 13-23051-CIV, 2018 U.S. Dist. LEXIS 162610 (S.D. Fla. August 28, 2018) (Martinez, J.). When interpreting such waivers or disclaimers, jurisprudence in this District holds that "[a] limitation of liability provision is binding where the contract 'reasonably communicate[s] to the passenger the existence therein of important terms and conditions which affects legal rights.'" *Wajnstat*, 2011 WL 13099034, at *3 (citing *Shankles v. Costa Armat*ori, S.P.A., 722 F.2d 861, 864 (1st Cir. 1983)). The *Wajnstat* court applied a two-part test to determine whether a cruise line reasonably communicated an important term of the contract to the passenger: (I) the physical characteristics of the contract; and (II) any extrinsic factors indicating the passenger's ability to become meaningfully informed. *Id*.

The Athens Convention Relating to the Carriage of Passengers and their Luggage by Sea and 2002 Protocol amending the Athens Convention are treaties that both impose responsibilities and confer rights on any international carriages when: (a) the ship in question flies the flag or is registered in a state which is party to the Athens Convention; (b) the contract for the carriage was made in a state which is party to the Athens

Convention; or (c) the ship embarks or disembarks, according to the contract for carriage, in a state which is party to the Athens Convention. Athens Convention Relating to the Carriage of Passengers and their Luggage by Sea, Art. 1, Dec. 13, 1974, 1463 U.N.T.S. 19.

The United States has neither signed nor ratified either the Athens Convention or the 2002 Protocol. According to the Vienna Convention on the Law of Treaties, "[a] treaty does not create either obligations or rights for a third State without its consent."[7] Vienna Convention on the Law of Treaties, Art. 34, May 23, 1969, 1155 U.N.T.S. 331. This language makes clear that the Athens Convention, as a legal document, does not have any binding effect on the United States or any of its courts.

**III. Discussion**

    a. <u>The Waiver of Liability in the Ticket Contract is Valid and Enforceable under General Maritime Law.</u>

Azamara argues in its Motion that the Shore Excursion Waiver, contained within the Ticket Contract, bars the Plaintiff's claims. Section 6 of the Ticket Contract states:

> All arrangements made for or by Passenger for transportation…as well as…shore excursions…are at Passenger's risk. The providers, owners and operators of such service…are independent contractors and are not acting as agents or representatives of Carrier …Carrier does not undertake to supervise or control such independent contractors or their employees…In no event shall Carrier be liable for any…injury, death or other harm whatsoever to Passenger which occurs on or off the Vessel or the Transport as a result of any acts, omissions or negligence of any independent contractors.

---

[7] The United States has signed, but not ratified, the Vienna Convention. Accordingly, it is not binding on any courts of the United States. Nevertheless, or perhaps fittingly, the Court recognizes that as a general principle of international law, a state which has not given its consent to be bound by a treaty is not bound by that treaty.

D.E. 39-1 at 11. The Plaintiff claims that she relied on representations made by Azamara on its website and promotional materials, which she claims guaranteed the quality and safety of the shore excursions. D.E. 27 at 9-12. However, the representations the Plaintiff claims she relied upon are not found within the Ticket Contract, where the Shore Excursion Waiver can be found. The Court now applies the two-prong test found in *Wajnstat* to determine whether the Shore Excursion Waiver was reasonably communicated to the Plaintiff. *Wajnstat*, 2011 WL 13099034, at *3.

First, the Court considers the physical characteristics of the Ticket Contract. The first page of the Ticket Contract states "IMPORTANT NOTICE TO GUESTS" followed by language stating that the Ticket Contract "contains important limitations on the rights of passengers. It is important that you carefully read all the terms of this Contract." D.E. 39-1 at 1. As stated above, Section 6 of the Ticket Contract states that the operators of shore excursions are independent contractors, and explicitly states that Azamara is not liable for injuries sustained during shore excursions. D.E. 39-1 at 11. There is no language in the Ticket Contract that would contradict the terms of the Shore Excursion Waiver. Accordingly, the first prong of the test is met.

Second, the Court considers the extrinsic factors which would indicate a passenger's ability to become meaningfully informed. Facially, there is no arcane language in the Ticket Contract which would impede her ability to understand the Shore Excursion Waiver.[8] The

---

[8] The *Wajnstat* Court found that a ticket contract's limitation of liability clause was not enforceable because to comprehend the clause, the layperson plaintiff would have had to research several

Plaintiff's argument that she relied upon Azamara's representations *outside of* the Ticket Contract is broadly unavailing. Nevertheless, the Plaintiff points to representations made by Azamara which she claims led her to believe that the operators of the shore excursions were employees of Azamara instead of independent contractors and that the safety of shore excursions was guaranteed by Azamara. D.E. 27 at 9-12. Plaintiff argues that the appearance of the Azamara logo on the promotional materials, and language such as "our specially curated [shore excursions]" would indicate that Azamara was in fact the owner or operator of the shore excursions. *Id*.

This argument does not find footing in the jurisprudence of Eleventh Circuit courts. In *Henderson v. Carnival Corp.*, the District Court upheld a waiver of liability for the actions of independent contractors operating a catamaran excursion, even when the operators of the excursion wore shirts bearing the Carnival logo. *Henderson v. Carnival Corp.*, 125 F.Supp.2d 1375, 1377 (S.D. Fla. 2000) (Moore, J.). Based on the language of the Ticket Contract, and relevant jurisprudence, the Court finds that the language of the Shore Excursion Waiver was reasonably communicated to the Plaintiff.

To support its argument to uphold the Shore Excursion Waiver, Azamara points to the Magistrate Judge's report and recommendations in the case of *Barham v Royal Caribbean Cruises, Ltd*. *See generally* D.E. 39; D.E. 55. The Magistrate Judge recommended that a waiver of liability, identical to the Shore Excursion Waiver in the

---

treaties and educate themself on the meaning and significance of Special Drawing Rights. *Wajnstat*, 2011 WL 13099034, at *5.

Azamara Ticket Contract, was valid and enforceable under general maritime law. *See generally Barham v Royal Caribbean Cruises, Ltd.*, 2022 WL 17987302, (S.D. Fla. Oct. 4, 2022) (Goodman, J.). The Plaintiff argues, correctly, that since *Barham* is a report and recommendations which was not adopted or rejected by the District Court in that case, it does not bind this Court. D.E. 47 at 8. Nevertheless, the Court may still find *Barham* persuasive, if not binding.

The Magistrate Judge in *Barham* recommended that the District Court find the waiver in that case valid, because the waiver of liability was not barred by 46 U.S.C. § 30509, and because courts in this Circuit have previously upheld waivers of liability in other, similar cases. [9] *Barham*, 2022 WL 17987302 at *18-20. One such case is *Henderson v. Carnival Corp.*, in which the District Court found valid and enforceable a waiver of liability for injuries caused by independent contractors operating a catamaran excursion. *Henderson v. Carnival Corp.*, 125 F.Supp.2d at 1377.

As such, although *Barham* does not create a binding precedent, the report and recommendations from that case is nevertheless persuasive in the present case. The fact that the waiver of liability which the *Barham* Court concluded was valid and enforceable

---

[9] 46 U.S.C. § 30509 was renumbered § 30527 in 2022. Under federal law, carrier ships that transport passengers between United States ports, or transport passengers between a United States port and a foreign port may not limit the liability of the owner of the ship or their employees for personal injury or death caused by the negligence of the owner or their employees. 46 U.S.C. § 30527(a). Ticket contract waivers for such cruises are thus void. *Id*. In the present case however the subject cruise did not disembark from, or travel to, any U.S. ports. Accordingly, the Shore Excursion Waiver is not voided by § 30527.

is identical to the Shore Excursion Waiver in the present case bolsters the usefulness of *Barham* in this case.

For the above reasons, the Court finds that the Ticket Contract's Shore Excursion Waiver is valid and enforceable under general maritime law and federal statute. Since the Shore Excursion Waiver was valid and enforceable, the Plaintiff could be reasonably expected to have been aware that the operators of the shore excursion were independent contractors, and not employees under the control of Azamara.

b. The Athens Convention, its 2002 Protocol, the Laws of the European Union, and Cases Decided by Courts Therein do not Invalidate the Waiver of Liability.

Azamara asserts that the Shore Excursion Waiver is valid and enforceable under General Maritime Law and that the Athens Convention does not invalidate the Shore Excursion Waiver. D.E. 39 at 8-9. On the other hand, the Plaintiff has predicated her Complaint on the legal theory that the Athens Convention and the laws of the European Union invalidate the Shore Excursion Waiver. *See generally* D.E. 27; D.E. 47 at 7-13. This argument, however, is meretricious as best.

The United States is not a signatory of the Athens Convention and is certainly not a member of the European Union. "Because the United States has not ratified the Athens Convention, it carries no force of law on its own. However, a contract provision that incorporates the Athens Convention to limit carrier liability for personal injury may be enforceable as a term of a valid contract." *Wajnstat*, 2011 WL 13099034, at *3 (citation omitted). Further, the enforcement of the Athens Convention as a term of a ticket contract may not conflict with the laws of the United States. *Henson v. Seabourn Cruise Line Ltd.*

11

*Inc.*, 410 F.Supp.2d 1246 at 1248-1249 (S.D. Fla. 2005) (Moreno, J.). As such, the Athens Convention holds no binding effect beyond its valid incorporation as a term to the contract.

The Plaintiff acknowledges that the Athens Convention holds no inherent binding effect in the United States and cites *Wajnstat* in support of this proposition. D.E. 47 at 5 n.6. The Plaintiff argues, however, that due to the incorporation of the Athens Convention and Regulation 392/2009 in Section 12(d) of the Ticket Contract, the Ticket Contract has adopted the Athens Convention in its entirety. D.E. 27 at 4. The Plaintiff accordingly asserts that the Ticket Contract *as a whole* is governed not only by all of the terms of the Athens Convention and Regulation 392/2009 but a bevy of other regulations and directives of the European Union as well. *See* D.E. 47 at 7-13.

This argument does not find support in the jurisprudence of the Eleventh Circuit, however. *Wajnstat* states that the Athens Convention may be applicable, but only as a term of a contract. *Wajnstat*, 2011 WL 13099034, at *3. The Eleventh Circuit has further held that cruise ship ticket contracts may incorporate specific provisions of the Athens Convention without being bound by all provisions of the Athens Convention. *See Farris v. Celebrity Cruises Inc.*, No. 11-21489-CIV, 2011 WL 13175627, at *4 (S.D. Fla. June 29, 2011) (Lenard, J.), *aff'd*, 487 F. App'x 542 (11th Cir. 2012).

The only mention in the Ticket Contract of the Athens Convention or Regulation 392/2009 is found in Section 12(d). D.E. 39-1 at 13-14. Section 12(d) of the Ticket Contract limits the liability of the carrier for death or personal injuries suffered on voyages that embark or disembark from a European Union Member State to the amounts allowable

12

under the Athens Convention and Regulation 392/2009. *Id*. Section 12(d) does not promise rights for the Plaintiff under the Athens Convention or any of the laws of the European Union. D.E. 39-1 at 13-14.

For these reasons, the incorporation of a provision of the Athens Convention as a term in the Ticket Contract does not cause the Ticket Contract in its entirety to fall under the scope of the Athens Convention or any of the laws of the European Union.[10] The Court thus finds that there is no reason why the Shore Excursion Waiver would be invalidated by the Athens Convention or other European Union laws.

c. <u>The Waiver of Liability in the Ticket Contract is not Ambiguous.</u>

Azamara Contends that the terms of the Ticket Contract, including the Shore Excursion Waiver, are unambiguous. D.E. 39 at 6-7; D.E. 55 at 4-5. The Plaintiff argues that these terms of the Ticket Contract are ambiguous, and that this ambiguity must be

---

[10] The Plaintiff has apparently attempted to use references to the Athens Convention and Regulation 392/2009 contained in Section 12(d) of the Ticket Contract to open the floodgates to a deluge of European Union law. She cites cases decided by the English High Court of Justice, or EWHC, which, if applicable, would support invalidating the Shore Excursion Waiver. *See generally* D.E. 47. She cites numerous regulations and directives of the European Union. *Id*. In addition to the fact that the Courts of the United States are not bound by the law of the European Union, the laws cited by the Plaintiff would likely not be applicable even in a European court. Plaintiff acknowledges that Council Directive 90/314/EEC ("Directive 90/314") is no longer in effect. D.E. 47 at 4. Yet, the Plaintiff continues to cite Directive 90/314 as a source of legal authority. *Id* at 11. Moreover, directives are not directly applicable law. Rather, a directive "is a legislative act that sets out a goal that EU countries must achieve. However, it is up to the individual countries to devise their own laws on how to reach these goals." https://european-union.europa.eu/institutions-law-budget/law/types-legislation_en. Directives do not automatically confer on individuals rights enforceable against member states, except in specific circumstances. *See* Case 41/74, *Yvonne van Duyn v Home Office*, 1974 E.C.R. 01337.With this in mind, should Plaintiff opt to invoke the laws of the European Union, or the laws of any other nation or supranational organization, her counsel is advised to ensure that they are in fact relying on good and applicable law.

resolved in her favor. D.E. 47 at 6. Indeed, "[c]ruise passenger tickets are contracts of adhesion, and as such, ambiguities in them must be construed against the carrier." *Wajnstat*, 2011 WL 13099034, at *5 (citing *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 838 (9th Cir. 2002)). However, the ambiguities which the Plaintiff seeks to delineate are grounded in her assertion that the Shore Excursion Waiver is invalidated by the Athens Convention, and various European Union regulations and directives.

The Court has already disposed of these arguments, however, and without the involvement of these sources of law, there is no ambiguity in the Ticket Contract. The portion of the Ticket Contract at issue in this case is the Shore Excursion Waiver in Section 6 which states Azamara is not liable for, *inter alia*, injuries sustained during shore excursions. D.E. 39-1 at 11. Section 12(d), which is the only section invoking the Athens Conventions and Regulation 392/2009, concerns the limitation of liability for the carrier on cruises that embark or disembark in ports within the European Union and is contained within Section 12(d) of the Ticket Contract. *Id* at 13-14. Section 12(d) of the Ticket Contract differs from Section 6 in that Section 12(d) applies to instances where the carrier *is liable* but seeks to *limit its liability*. The Ticket Contract states that except as otherwise provided, the contract is governed by general maritime law.[11] *Id* at 14.

Based on her arguments, it appears that the Plaintiff is attempting to conflate separate sections of the Ticket Contract in the hopes of creating ambiguity where none otherwise exists. The Plaintiff's arguments, while colorful, are not persuasive. By contrast,

---

[11] Section 6 of the Ticket Contract does not stipulate a different choice of laws. D.E. 39-1 at 11.

Azamara has shown that the terms of the Ticket contract are not ambiguous. As such, the Court finds that the Ticket Contract unambiguously communicated the Shore Excursion Waiver to the Plaintiff.

## IV. Conclusion

In the Amended Complaint, the Plaintiff's claim that Azamara is liable for the injuries she sustained during the shore excursion is predicated on the invalidity of the Shore Excursion Waiver contained within the Ticket Contract. As the Shore Excursion Waiver is valid and enforceable under United States law and is not invalidated by the Athens Convention or European Union law, the Court finds that the Amended Complaint (D.E. 27) has failed to state a claim on which relief may be granted. Accordingly, it is

**ORDERED AND ADJUDGED** that the Plaintiff's Amended Complaint (D.E. 27) is **DISMISSED without prejudice**. The Plaintiff shall have fourteen (14) days from the date of entry of this Order to file amended pleadings. Failure to do so may result in the dismissal of this case with prejudice.

**DONE AND ORDERED** in Chambers at Miami, Florida this 10th day of December, 2024.

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**